# EXHIBIT 2

# INVESTMENT PROMOTION AND PROTECTION TREATIES

## India/Mauritius

Compiled by

### INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES

Release 2010-1
Issued March 2010

**Oceana®**
NEW YORK

### AGREEMENT BETWEEN THE REPUBLIC OF INDIA AND THE REPUBLIC OF MAURITIUS FOR THE PROMOTION AND RECIPROCAL PROTECTION OF INVESTMENTS

The Government of the Republic of Mauritius and the Government of the Republic of India (hereinafter referred to as the "Contracting Parties");

DESIRING to create favourable conditions for greater flow of investments made by investors of either Contracting Party in the territory of the other Contracting Party; and

RECOGNISING that the promotion and protection of such investments will lend greater stimulation to the development of business initiatives and will increase prosperity in the territories of both Contracting Parties;

HAVE agreed as follows:

### ARTICLE 1
### DEFINITIONS

(1) In this Agreement,

(a) "investment" means every kind of asset established or acquired under the relevant laws and regulations of the Contracting Party in whose territory the investment is made, and in particular, though not exclusively, includes:

(i) movable and immovable property as well as other rights *in rem* such as mortgages, liens or pledges;

(ii) shares, debentures and any other form of participation in a company;

(iii) claims to money, or to any performance under contract having an economic value;

(iv) intellectual property rights, goodwill, technical processes, know-how, copyrights, trade-marks, trade-names and patents in accordance with the relevant laws of the respective Contracting Parties;

(v) business concessions conferred by law or under contract, including any concession to search for, extract or exploit natural resources;

(b) "investor" means in respect to either Contracting Party:

(i) the "national", that is a natural person deriving his or her status as a national of that Contracting Party from the relevant laws of that Contracting Party; and

(ii) the "company" that is a legal person, such as a corporation, firm or association, incorporated or constituted in accordance with the law of that Contracting Party;

Text provided by Board of Investment, Mauritius. The text has been reformatted for the *Investment Treaties* collection.

(c) "return" means the amount yielded by an investment and includes profit, interest, capital gains, dividends, royalties and fees;

(d) "territory" means—

    (i) in the case of the Republic of Mauritius—

        (A) all the territories and islands which, in accordance with the laws of Mauritius constitute the State of Mauritius;

        (B) the territorial sea of Mauritius; and

        (C) any area outside the territorial sea of Mauritius which in accordance with international law has been or may hereafter be designated, under the laws of Mauritius, as an area, including the continental shelf, within which the rights of Mauritius with respect to the sea, the sea-bed and sub-soil and their natural resources may be exercised;

    (ii) in the case of the Republic of India—

        the territory of the Republic of India including its territorial waters and the airspace above it and other maritime zones including the Exclusive Economic Zone and continental shelf over which the Republic of India has sovereignty, sovereign rights or exclusive jurisdiction in accordance with its laws in force, the 1982 United Nations Convention on the Law of the Sea and International Law.

(2) Any change in the form in which assets are or have been invested does not affect their character as investments as defined in this Agreement.

## ARTICLE 2
### SCOPE OF THE AGREEMENT

This Agreement shall apply to all investments made by investors of either Contracting Party in the territory of the other Contracting Party, accepted as such in accordance with its laws and regulations, whether made before or after the coming into force of this Agreement.

## ARTICLE 3
### PROMOTION AND PROTECTION OF INVESTMENTS

(1) Each Contracting Party shall encourage the making of investments in its territory by investors of the other Contracting Party, and admit such investments in accordance with the provision of its laws and its policy in the field of foreign investment.

(2) Each Contracting Party shall in accordance with its laws render assistance to the investors of the other Contracting Party, whose investments were admitted in its territory, for obtaining the required clearances and permissions.

## ARTICLE 4
### TREATMENT OF INVESTMENTS

(1) Investments and returns of investors of either Contracting Party shall at all times be accorded fair and equitable treatment in the territory of the other Contracting Party. Neither Contracting Party shall in any way impair by unreasonable or discriminatory measures the management, maintenance, use, enjoyment or disposal of investments in its territory by investors of the other Contracting Party.

(2) Each Contracting Party shall accord to investments of investors of the other Contracting Party, treatment which shall not be less favourable than that accorded either to investments of its own or investments of investors of any third State.

(3) In addition, each Contracting Party shall accord to investors of the other Contracting Party, including in respect of returns on their investments, treatment which shall not be less favourable than that accorded to investors of any third State.

(4) The provisions of paragraphs (2) and (3) shall not be construed so as to oblige either Contracting Party to extend to the investors of the other Contracting Party the benefit of any treatment, preference or privilege resulting from:

(a) any customs union, free trade area, common market or any similar international agreement or interim arrangement leading up to such customs union, free trade area, or common market of which either of the Contracting Parties is a member; or

(b) any international agreement or any matter relating wholly or mainly to taxation.

## ARTICLE 5
### COMPENSATION FOR LOSSES

(1) Investors of either Contracting Party whose investments in the territory of the other Contracting Party suffer losses owing to war or other armed conflict, revolution, a state of national emergency, revolt, insurrection or riot in the territory of the latter Contracting Party shall be afforded by the latter Contracting Party treatment, as regards restitution, indemnification, compensation or other settlement, not less favourable than that which the latter Contracting Party accords to its own investors or to investors of any third State.

(2) Subject to paragraph (1) of this Article, investors of either Contracting Party who, in any of the situations referred to in that paragraph, suffer losses in the territory of the other Contracting Party resulting from:

(a) requisitioning of their property by the forces or authorities of the latter Contracting Party, acting under and within the scope of the legal provisions relating to their competences, duties and command structures; or

3

(b) destruction of their property by the forces or authorities of the latter Contracting Party, which was not caused in combat action or was not required by the necessity of the situation or observance of any legal requirement;

shall be afforded treatment as regards restitution or adequate compensation, not less favourable than that which the latter Contracting Party accords to its own investors or to investors of any third State.

## ARTICLE 6
### EXPROPRIATION

(1) Investments of investors of either Contracting Party in the territory of the other Contracting Party shall not be nationalised, expropriated or subjected to measures having effects equivalent to nationalisation or expropriation except for public purposes, under due process of law, on a non-discriminatory basis and against fair and equitable compensation. Such compensation shall amount to the market value of the investment expropriated immediately before the expropriation or before the impending expropriation became public knowledge, whichever is the earlier, shall include interest at a fair and equitable rate until the date of payment, shall be made without unreasonable delay and shall be effectively realizable and be freely transferable.

(2) The investor affected by the expropriation shall have right, under the law of the Contracting Party making the expropriation, to review, by a judicial or other independent authority of that Party, of his or its case and of the valuation of his or its investment in accordance with the principles set out in this paragraph.

(3) Where a Contracting Party expropriates, nationalises or takes measures having effect equivalent to nationalisation or expropriation against the assets of a company which is incorporated or constituted under the laws in force in any part of its own territory, and in which investors of the other Contracting Party own shares, it shall ensure that the provisions of paragraph (1) of this article are applied to the extent necessary to ensure fair and equitable compensation as specified therein to such investors of the other Contracting Party who are owners of those shares.

## ARTICLE 7
### TRANSFER OF INVESTMENT CAPITAL AND RETURNS

(1) Each Contracting Party shall permit all funds of an investor of the other Contracting Party related to an investment in its territory to be freely transferred, without unreasonable delay and on a non-discriminatory basis. Such funds may include:

(a) capital and additional capital amounts used to maintain and increase investments;

(b) net operating profits including dividends and interest in proportion to their share-holdings;

4

(c) repayments of any loan including interest thereon, relating to the investments;

(d) payment of royalties and services fees relating to the investment;

(e) proceeds from sales of their shares;

(f) proceeds received by investors in case of sale or partial sale or liquidation;

(g) the earnings of citizens/nationals of one Contracting Party who work in connection with investment in the territory of the other Contracting Party;

(h) any compensation paid pursuant to Articles 5 and 6.

(2) All transfers shall be effected without unreasonable delay in any freely convertible currency at the market rate of exchange prevailing on the date of transfer.

### ARTICLE 8
### SETTLEMENT OF DISPUTES BETWEEN AN
### INVESTOR AND A CONTRACTING PARTY

(1) Any dispute between an investor of one Contracting Party and the other Contracting Party in relation to an investment of the former under this Agreement shall, as far as possible, be settled amicably through negotiations between the parties to the dispute.

(2) If such dispute cannot be settled according to the provisions of paragraph (1) of this Article within six months from the date of request for settlement, the investor may submit the dispute to:

(a) arbitration in accordance to the law of the Contracting Party; or

(b) if the Contracting Party of the investor and the other Contracting Party are both parties to the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States, of March 18, 1965 and the investor consents in writing to submit the dispute to the International Centre for the Settlement of Investment Disputes, such a dispute shall be referred to the Centre; or

(c) to international conciliation under the Conciliation Rules of the United Nations Commission on International Trade Law; or

(d) to an *ad hoc* arbitral tribunal set up in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law, 1976, subject to the following modifications:

(i) The appointing authority under Article 7 of the Arbitration Rules shall be the President, the Vice-President or the next senior Judge of the International Court of Justice, who is not a national of either Contracting Party. The third arbitrator shall not be a national of either Contracting Party.

(ii) The parties shall appoint their respective arbitrators within two months.

(iii) The arbitral award shall be made in accordance with the provisions of this Agreement and shall be binding on the parties to the dispute.

(iv) The arbitral tribunal shall state the basis of its decision and give reasons upon the request of either party.

(3) Where a dispute has been submitted for resolution under paragraph 2 (a), 2 (b), 2 (c) or 2 (d) above, the choice so exercised shall not be changed except with the consent of the Contracting Party which is party to the dispute.

(4) Notwithstanding anything contained in paragraph (2) above, the Contracting Party which is a party to the dispute shall have the option to submit the dispute for resolution to international arbitration in accordance with procedure set out in paragraph 2(d) above.

## ARTICLE 9
### DISPUTES BETWEEN THE CONTRACTING PARTIES

(1) Any dispute between the Contracting Parties concerning the interpretation or application of this Agreement should, if possible, be settled through negotiations between the Governments of the two Contracting Parties.

(2) If the dispute cannot be settled within a period of six months following the date on which such negotiations were requested by either Contracting Party, it may upon the request of either Contracting Party, be submitted to an arbitral tribunal.

(3) Such an arbitral tribunal shall be constituted for each individual case in the following way: within two months of the receipt of the request for arbitration, each Contracting Party shall appoint one arbitrator for the tribunal. Those two arbitrators shall then select a national of a third State who, upon approval by the two Contracting Parties, shall be appointed Chairman of the tribunal. The Chairman shall be appointed within two months from the date of appointment of the other two arbitrators.

(4) If within the periods specified in paragraph (3) of this Article the necessary appointments have not been made, either Contracting Party may, in the absence of any other agreement, invite the President of the International Court of Justice to make any necessary appointments. If the President is a national of either Contracting Party or if he is otherwise prevented from discharging the said function, the Vice-President shall be invited to make the necessary appointments. If the Vice-President is a national of either Contracting Party or if he too is prevented from discharging the said function, the Member of the International Court of Justice next in seniority who is not a national of either Contracting Party and not prevented from discharging such functions shall be invited to make the neccesary appointments.

(5) The arbitral tribunal shall reach its decision by a majority of votes. Such decision shall be binding on both Contracting Parties. Each Contracting Party shall bear the cost of its own arbitrator to the tribunal and of its representation in the arbitral proceedings. The cost of the Chairman and the remaining costs shall

6

be borne equally by the Contracting Parties. The tribunal may, however, in its decision direct that a higher proportion of costs shall be borne by one of the two Contracting Parties, and this award shall be binding on, and executed by, both Contracting Parties.

(6) The tribunal shall determine its own procedure.

## ARTICLE 10
## SUBROGATION

Where one Contracting Party or its designated agency has guaranteed any indemnity against non-commercial risks in respect of an investment by any of its investors in the territory of the other Contracting Party and has made payment to such investors in respect of their claims under this Agreement, the other Contracting Party agrees that the first Contracting Party or its designated agency is entitled by virtue of subrogation to exercise the rights and assert the claims of those investors. The subrogated rights or claims shall not exceed the original rights or claims of such investors.

## ARTICLE 11
## APPLICABLE LAWS

(1) If the provisions of the law of either Contracting Party or obligations under international law existing at present or established hereafter between the Contracting Parties, in addition to the present Agreement, contain rules, whether general or specific, entitling investments and returns of investors of the other Contracting Party to treatment more favourable than that provided for by the present Agreement, such rules shall, to the extent that they are more favourable, prevail over the present Agreement.

(2) Except as otherwise provided in this Agreement, all investments shall, be governed by the laws in force in the territory of the Contracting Party in which such investments are made.

(3) The provisions of this Agreement shall not in any way limit the right of either Contracting Party to apply prohibitions or restrictions of any kind or take any other action which is directed to the protection of its essential security interests, or to the protection of public health or the prevention of diseases in pests and animals or plants.

(4) Each Contracting Party shall, however, honour any obligation it may have entered into with regard to investments of investors of the other Contracting Party.

## ARTICLE 12
### ENTRY AND SOJOURN OF PERSONNEL

A Contracting Party shall, subject to its laws relating to the entry and sojourn of non-citizens, permit natural persons of the other Contracting Party and personnel employed by companies of the other Contracting Party to enter and remain in its territory for the purpose of engaging in activities connected with investments.

## ARTICLE 13
### FINAL CLAUSES

(1) The Contracting Parties shall notify each other promptly of the fulfilment of their legal procedures required for entry into force of this Agreement. The Agreement shall enter into force on the day following the date of receipt of the last notification.

(2) This Agreement shall remain in force for a period of ten years. Thereafter it shall continue in force until the expiration of twelve months from the date on which either Contracting Party shall have given written notice of termination of this Agreement to the other Contracting Party.

(3) In respect of investments approved and/or made prior to the date the notice of termination of this Agreement becomes effective, the provisions of the preceeding articles shall remain in force with respect to such investments for a further period of ten years from that date or for any longer period as provided for or agreed upon in the relevant contract or approval granted to the investor.

IN WITNESS WHEREOF the undersigned, duly authorized thereto, have signed this Agreement in Mauritius, on this fourth day of September of the year 1998, in duplicate in the English and Hindi languages, each text being equally authentic. In case of divergence, the English text shall prevail.

|  |  |
|---|---|
| (Sd.) D. Manraj | (Sd.) S.T. Devare |
| Financial Secretary | Secretary |
| Ministry of Finance | Ministry of External Affairs |
| For the Government of the Republic of Mauritius | For the Government of the Republic of India |