UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CC/DEVAS (MAURITIUS) LTD, DEVAS EMPLOYEES MAURITIUS PRIVATE LIMITED, and TELCOM DEVAS MAURITIUS LIMITED, | **MEMORANDUM OPINION & ORDER** |
| Plaintiffs, | |
| - against - | 21 Civ. 5601 (PGG) |
| AIR INDIA, LTD., | |
| Defendant. | |
| DEUTSCHE TELEKOM AG, | |
| Petitioner, | |
| - against - | 21 Civ. 9155 (PGG) |
| AIR INDIA, LTD., | |
| Respondent. | |

PAUL G. GARDEPHE, U.S.D.J.:

On June 28, 2021, Plaintiffs CC/Devas (Mauritius) Ltd., Devas Employees

Mauritius Private Ltd., and Telcom Devas Mauritius Ltd. (the "Devas Shareholders") filed a

Complaint seeking a declaration that Defendant/Respondent Air India, Ltd. is the alter ego of the

Republic of India, and that the Devas Shareholders may obtain money damages from Air India

pursuant to a foreign arbitration award rendered against the Republic of India.  (Cmplt. (Case

No. 21 Civ. 5601 ("Devas") Dkt. No. 1) at 43-44)[1]

---

[1]  Citations to page numbers of docketed material correspond to the pagination generated by the Electronic Case Files ("ECF") system used in this District and in the District Court for the District of Columbia.

On November 4, 2021, Petitioner Deutsche Telekom AG (together with the Devas Shareholders, "Plaintiffs") filed a petition to confirm a separate foreign arbitration award against the Republic of India.  In that petition, Deutsche Telekom – like the Devas Shareholders – seeks a declaration that Air India is the <u>alter ego</u> of the Republic of India.  Deutsche Telekom seeks money damages from Air India pursuant to a foreign arbitration award rendered against the Republic of India.  (Pet. (Case No. 21 Civ. 9155 ("<u>Deutsche Telekom</u>") Dkt. No. 1 at 63-64)

On November 25, 2021, Air India moved to stay both actions pending resolution of the Republic of India's motions to dismiss in two related proceedings in the District Court for the District of Columbia or, in the alternative, to stay discovery in both actions pending resolution of Air India's anticipated motions to dismiss for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. §§ 1602 <u>et seq.</u>

In a January 27, 2022 letter, Air India drops its request for a full stay of the instant actions.  Air India now seeks (1) permission to move to dismiss these actions as moot in light of Air India's sale to a private entity; and (2) an order staying discovery until its motions to dismiss are resolved.  (Jan. 27, 2022 Air India Ltr. (<u>Devas</u> Dkt. No. 48; <u>Deutsche Telekom</u> Dkt. No. 30))

The Devas Shareholders and Deutsche Telekom opposed Air India's original motion to stay, and likewise oppose Air India's new request to stay discovery until resolution of its motions to dismiss on mootness grounds.  The Devas Shareholders and Deutsche Telekom have cross-moved for expedited discovery.  (<u>Devas</u> Dkt. No. 29; <u>Deutsche Telekom</u> Dkt. No. 23)

For the reasons stated below, (1) these proceedings will be stayed until motions to dismiss pending in related cases before the United States District Court for the District of Columbia are resolved; (2) the Devas Shareholders' and Deutsche Telekom's motions for

expedited discovery will be denied as moot; and (3) Air India's request to set a briefing schedule for its motions to dismiss on mootness grounds is denied.

## BACKGROUND

### I.     UNDERLYING AGREEMENT BETWEEN DEVAS AND ANTRIX

The instant actions arise from a 2005 agreement (the "Devas-Antrix Agreement" or "Agreement") between Devas Multimedia Private Ltd. ("Devas"), a privately-owned Indian corporation that offers satellite and telecommunications technology, and Antrix Corporation, a corporation wholly-owned by the Republic of India and used as the commercial arm of the Indian national space program.  (Cmplt. (Devas Dkt. No. 1) ¶ 2; Pet. (Deutsche Telekom Dkt. No. 1) ¶¶ 2, 22)  The Agreement provides that Antrix – through Indian governmental agencies – will build and launch two satellites that will "make available to Devas 70 MHz of transponder capacity in the 'S-band' of the electromagnetic spectrum."  (Cmplt. (Devas Dkt. No. 1) ¶ 22) The Agreement has an effective date of February 2, 2006.  (Id.)

On February 17, 2011, however, the Republic of India's Cabinet Committee on Security "announced that it 'had decided to annul' the Agreement."  A few days later, "Antrix informed Devas that the Agreement was 'terminated.'"  (Id. ¶ 23)

### II.     THE FOREIGN ARBITRATION AWARDS

Based on Antrix's alleged breach of the Agreement, Devas and its shareholders commenced several arbitration proceedings against the Republic of India between 2011 and 2013.  (Id. ¶¶ 25, 28; Pet. (Deutsche Telekom Dkt. No. 1) ¶¶ 26-29)  Two of those arbitration proceedings are relevant to the instant actions.

3

A.      **The Hague Proceedings**

The Devas Shareholders are three Mauritius-based companies that own shares in Devas.[2] (Cmplt. (Devas Dkt. No. 1) ¶¶ 11-13) Under a bilateral investment treaty – the Agreement Between the Republic of India and the Republic of Mauritius for the Promotion and Reciprocal Protection of Investments (the "India-Mauritius Treaty") – investors based in India and Mauritius are permitted to initiate arbitration proceedings against either India or Mauritius based on alleged expropriations of investments in either of those countries. (Id., Ex. 2 (India-Mauritius Treaty) at 7-8) On July 3, 2012, the Devas Shareholders initiated such an arbitration against the Republic of India based on India's annulment of the Devas-Antrix Agreement. (Id. ¶ 25) Pursuant to the India-Mauritius Treaty, a tribunal was convened in The Hague, Netherlands, to conduct the arbitration ("The Hague Tribunal"). (Id. ¶ 5)

On July 25, 2016, The Hague Tribunal issued a merits award against the Republic of India and in favor of the Devas Shareholders. The Tribunal found the Republic of India liable under the India-Mauritius Treaty based on its annulment of the Devas-Antrix Agreement. (Id. ¶ 25; id., Ex. 1 (The Hague Merits Award) ¶ 501) On October 13, 2020, The Hague Tribunal

---

[2] Since filing the Complaint, the Devas Shareholders have moved to substitute three Delaware LLCs – CCDM Holdings, LLC, Telecom Devas, LLC, and Devas Employees Fund US, LLC – as Plaintiffs pursuant to Fed. R. Civ. P. 25(c). (Mot. to Substitute (Devas Dkt. No. 39)) In response, Air India requests that this Court

> either defer decision on [the Devas Shareholders'] motion pending a determination of Air India's immunity, or else grant the motion on the condition that no substantive right of Air India shall be affected and that Air India shall be entitled to contest the substitution in the event the Court later denies Air India's previewed motion to dismiss on ripeness or sovereign immunity grounds.

(Air India Opp. Br. (Devas Dkt. No. 46) at 2) As the Devas Shareholders' motion to substitute does not substantively impact the motions that are the subject of this order, the Court will defer decision on the Devas Shareholders' motion to substitute until after the stay of these proceedings is lifted.

issued its final award, ordering the Republic of India to pay the Devas Shareholders damages of $111,296,000 plus interest, and $10 million in costs and legal fees plus interest.  (Id. ¶ 25; id., Ex. 3 (The Hague Final Award) ¶ 663(c)-(g))

The Republic of India petitioned courts in the Netherlands to set aside both the merits award and the final award issued by The Hague Tribunal.  (Id. ¶¶ 26-27)  In November 2018, The Hague District Court upheld the merits award, and in February 2021, The Hague Court of Appeal affirmed that decision.  (Id. ¶ 26)  The Republic of India has appealed The Hague Court of Appeal's decision to the Dutch Supreme Court, and that appeal remains pending. (Id.; Devas Shareholders Br. (Devas Dkt. No. 30) at 9 n.1)

The Republic of India's petition to set aside The Hague Tribunal's final award remains pending before The Hague District Court.  (Cmplt. (Devas Dkt. No. 1) ¶ 27; Devas Shareholders Br. (Devas Dkt. No. 30) at 9 n.1)  On May 17, 2021, however, The Hague District Court entered an "exequatur order" allowing the Devas Shareholders to enforce the final award against India's property in the Netherlands.[3]  (Cmplt. (Devas Dkt. No. 1) ¶ 27; Champion Decl. (Devas Dkt. No. 34) ¶ 7; Exequatur Order (Devas Dkt. No. 34, Ex. 4.1) at 81)  Despite the exequatur order, the Republic of India has not paid any portion of The Hague Tribunal's final award in favor of the Devas Shareholders.  (Cmplt. (Devas Dkt. No. 1) ¶ 38)

B.    **The Geneva Proceedings**

Deutsche Telekom is an indirect shareholder of Devas and is based in Germany. (Pet. (Deutsche Telekom Dkt. No. 1) ¶¶ 2, 14)  Under the Agreement between the Federal

---

[3]  Under Dutch law, an "exequatur" order allows Dutch arbitration awards to be enforced by Dutch courts.  See Bosnak & Jonk, Int'l Civ. P. § 12.2 (2003 ed.).  In this case, The Hague District Court's exequatur order "is unaffected by India's ongoing appeal [of The Hague Tribunal's merits award] or its attempt to set aside [The Hague Tribunal's final award]." (Champion Decl. (Devas Dkt. No. 34) ¶ 7)

Republic of Germany and the Republic of India for the Promotion and Protection of Investments (the "Germany-India Treaty"), Germany and India have agreed to arbitrate disputes with investors from the other signatory country arising out of investments made in Germany or India. (Id. ¶ 28; Germany-India Treaty (Deutsche Telekom Dkt. No. 6, Ex. 2) at 9)  Accordingly, on September 2, 2013, Deutsche Telekom initiated an arbitration proceeding against the Republic of India based on India's annulment of the Devas-Antrix Agreement.  (Pet. (Deutsche Telekom Dkt. No. 1) ¶ 29)  The parties agreed that the arbitration would be conducted by a tribunal sitting in Geneva, Switzerland (the "Geneva Tribunal").  (Id. ¶ 32)

On December 13, 2017, the Geneva Tribunal issued an interim award affirming its jurisdiction and finding the Republic of India liable under the Germany-India Treaty based on its annulment of the Devas-Antrix Agreement.  (Id. ¶ 34; Geneva Interim Award (Deutsche Telekom Dkt. No. 6, Ex. 3) ¶ 424)  On May 27, 2020, the Geneva Tribunal issued a final damages award, ordering the Republic of India to pay Deutsche Telekom $93.3 million in damages plus interest, as well as costs and legal expenses associated with the Geneva arbitration. (Pet. (Deutsche Telekom Dkt. No. 1) ¶ 36; Geneva Final Award (Deutsche Telekom Dkt. No. 6, Ex. 1) ¶ 357)

The Republic of India applied to the Swiss Federal Supreme Court to set aside the Geneva Tribunal's interim award, but that court denied India's application on December 11, 2018.  (Pet. (Deutsche Telekom Dkt. No. 1) ¶ 35; Swiss Sup. Ct. Decision (Deutsche Telekom Dkt. No. 6, Ex. 4) at 101)  The Republic of India did not seek judicial review of the Geneva Tribunal's final award, and the time to do so has expired.  (Pet. (Deutsche Telekom Dkt. No. 1) ¶ 47)  The Republic of India has not paid any portion of the Geneva Tribunal's final award in favor of Deutsche Telekom.  (Id. ¶ 38)

III.      **CONFIRMATION PROCEEDINGS IN D.C. DISTRICT COURT**

        After the foreign arbitration tribunals issued their final awards against the

Republic of India, the Devas Shareholders and Deutsche Telekom initiated separate proceedings

in the United States to recognize and enforce those arbitration awards under the Convention on

the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517,

330 U.N.T.S. 38 – commonly referred to as the "New York Convention."  (Cmplt. (Devas Dkt.

No. 1) ¶ 39; Pet. (Deutsche Telekom Dkt. No. 1) ¶ 39)  Pursuant to the New York Convention –

which is implemented in Chapter 2 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 201 et

seq. – parties to a foreign arbitration may petition U.S. courts to enforce an award issued by a

foreign arbitral tribunal.  See CBF Indústria de Gusa S/A v. AMCI Holdings, Inc., 850 F.3d 58,

72 (2d Cir. 2017) ("[B]oth the New York Convention and its implementing legislation in Chapter

2 of the FAA 'envision a single-step process for reducing a foreign arbitral award to a domestic

judgment.'"); 9 U.S.C. § 207 (providing that "[w]ithin three years after an arbitral award"

covered by the New York Convention is made, "any party to the arbitration may apply . . . for an

order confirming the award as against any other party to the arbitration").

        Plaintiffs initiated their confirmation proceedings against the Republic of India in

the United States District Court for the District of Columbia.  See CC/Devas (Mauritius) Ltd v.

Republic of India, 21 Civ. 106 (RCL) (D.D.C.); Deutsche Telekom AG v. Republic of India, 21

Civ. 1070 (RJL) (D.D.C.).  In the D.C. district court cases, Plaintiffs seek (1) orders recognizing

and confirming the final arbitration awards issued by The Hague Tribunal and the Geneva

Tribunal; and (2) judgments against the Republic of India in the full amounts of those awards.

See CC/Devas (Mauritius) Ltd v. Republic of India, 21 Civ. 106 (RCL), Pet. (Dkt. No. 1) at 32

(D.D.C. Jan. 13, 2021); <u>Deutsche Telekom AG v. Republic of India</u>, 21 Civ. 1070 (RJL), Pet.

(Dkt. No. 1) at 34 (D.D.C. Apr. 19, 2021).

On August 27, 2021, the Republic of India moved to dismiss the Devas

Shareholders' confirmation petition for lack of subject matter jurisdiction under the FSIA.  <u>See</u>

<u>CC/Devas (Mauritius) Ltd v. Republic of India</u>, 21 Civ. 106 (RCL), Mot. to Dismiss ("MTD")

(Dkt. No. 15) at 1 (D.D.C. Aug. 27, 2021).  The Republic of India argues that it is presumptively

immune from suit in the United States under the FSIA, and that neither of the two exceptions to

the FSIA invoked in the Devas Shareholders' confirmation petition – the "arbitration" exception

under 28 U.S.C. § 1605(a)(6), and the "waiver" exception under 28 U.S.C. § 1605(a)(1) – is

applicable.  <u>Id.</u>, India MTD Br. (Dkt. No. 15-1) at 23.  The Republic of India's motion to dismiss

the Devas Shareholders' confirmation petition is pending before Judge Royce C. Lamberth.[4]

On September 23, 2021, the Republic of India similarly moved to dismiss

Deutsche Telekom's confirmation petition for, <u>inter alia</u>, lack of subject matter jurisdiction under

the FSIA.  <u>See</u> <u>Deutsche Telekom AG v. Republic of India</u>, 21 Civ. 1070 (RJL), MTD (Dkt. No.

11) at 1 (D.D.C. Apr. 19, 2021).  As in the Devas Shareholders' confirmation proceeding, the

Republic of India argues that neither of the exceptions to the FSIA cited by Deutsche Telekom –

the "arbitration" exception and the "waiver" exception – are applicable.  <u>Id.</u>, India MTD Br.

(Dkt. No. 11-1) at 32.  The Republic of India's motion to dismiss Deutsche Telekom's petition is

pending before Judge Richard J. Leon.

---

[4]  The Republic of India has also moved to stay the proceeding before Judge Lamberth pending
resolution of (1) proceedings in the Dutch courts to set aside The Hague Tribunal's final award;
and (2) proceedings in Indian courts to wind-up Devas based on allegations of fraud against the
company.  <u>See</u> <u>id.</u>, India Mot. to Stay (Dkt. No. 14) at 1; <u>id.</u>, India Mot. to Stay Br. (Dkt. No. 14-
1) at 18-23, 35.  India's stay motion is likewise pending before Judge Lamberth.

IV.     **THE INSTANT ACTIONS AGAINST AIR INDIA**

The instant actions against Air India are premised on the claim that Air India is an alter ego of the Republic of India.[5]

A.     **Air India's Alleged *Alter Ego* Status**

Plaintiffs allege that "Air India is the national airline of India and is . . . wholly owned and controlled by India."  (Cmplt. (Devas Dkt. No. 1) ¶ 14; see also Pet. (Deutsche Telekom Dkt. No. 1) ¶ 15)  Plaintiffs further allege that (1) the Republic of India financially supports Air India through grants and loans, and controls Air India's access to other sources of funding; (2) the Republic of India appoints – and has the ability to remove – Air India's leadership; (3) all of Air India's profits and losses are borne by the Republic of India; (4) the Republic of India uses Air India to further its own political interests; and (5) the Republic of India does not observe corporate formalities in its day-to-day management of Air India.  (Cmplt. (Devas Dkt. No. 1) ¶¶ 50-55; Pet. (Deutsche Telekom Dkt. No. 1) ¶ 53)  According to Plaintiffs, Air India is "so extensively controlled by [the Republic of India] that a relationship of principal and agent is created," and treating Air India and the Republic of India as separate legal entities here would "work fraud or injustice."  First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba, 462 U.S. 611, 629 (1983) (quotation marks and citation omitted); (see Cmplt. (Devas Dkt. No. 1) ¶ 49; Pet. (Deutsche Telekom Dkt. No. 1) ¶ 49)  Plaintiffs contend that Air India is the "alter ego" of the Republic of India, such that Air India can be held liable for the actions of the Republic of India.  (Cmplt. (Devas Dkt. No. 1) ¶ 45; Pet. (Deutsche Telekom Dkt. No. 1) ¶ 48)

---

[5]  As discussed below, Air India was recently sold to a private entity and is no longer wholly owned by the Republic of India.  (Jan. 27, 2022 Air India Ltr. (Devas Dkt. No. 48; Deutsche Telekom Dkt. No. 30) at 1)

Plaintiffs thus seek to enforce as against Air India the final arbitration awards that The Hague Tribunal and the Geneva Tribunal entered against the Republic of India.  Although the Devas Shareholders' action was commenced by the filing of a complaint, whereas Deutsche Telekom's action was commenced via a petition to confirm a foreign arbitration award, Plaintiffs seek essentially the same relief:  (1) a declaration that Air India is the alter ego of the Republic of India; (2) a judgment holding Air India jointly and severally liable for the final awards issued by The Hague Tribunal and the Geneva Tribunal; and (3) a judgment that would permit Plaintiffs to attach Air India's assets in the United States.[6]  (See Cmplt. (Devas Dkt. No. 1) at 43-44; (Pet. (Deutsche Telekom Dkt. No. 1) at 63-64)

**B.**     **The Sale of Air India**

On October 8, 2021, the Republic of India announced that it had reached an agreement to sell Air India to Tata Sons, a private company that founded Air India in the 1930s under the name Tata Airlines.  (Pet. (Deutsche Telekom Dkt. No. 1) ¶¶ 55, 133; see also Boykin Decl., Ex. 16 (Deutsche Telekom Dkt. No. 6-16) at 2; Boykin Decl., Ex. 17 (Deutsche Telekom Dkt. No. 6-17) at 2)  On January 27, 2022, the sale of Air India to an affiliate of Tata Sons was consummated.  (Jan. 27, 2022 Air India Ltr. (Devas Dkt. No. 48; Deutsche Telekom Dkt. No. 30) at 1)

Deutsche Telekom claims that the sale of Air India to a private entity is an "attempt [by the Republic of India] to avoid its obligations [under the arbitration awards]," and that India "has acknowledged the potential impact of the sale on on-going enforcement actions,"

---

[6]  The Devas Shareholders also seek "interest, cost, fees and other expenses associated with this action, including reasonable attorney fees" (Cmplt. (Devas, Dkt. No. 1) at 44), while Deutsche Telekom requests that this Court "[r]ecogniz[e] and confirm[] in its entirety" the final Geneva Tribunal award "pursuant to Article III of the New York Convention and 9 U.S.C. § 207."  (Pet. (Deutsche Telekom Dkt. No. 1) at 63)

but nonetheless moved forward with the transaction.  (Pet. (<u>Deutsche Telekom</u> Dkt. No. 1) ¶ 133; <u>see also</u> Boykin Decl., Ex. 14 (<u>Deutsche Telekom</u> Dkt. No. 6-14) at 2 (July 23, 2021 news article reporting Indian Minister of State for Civil Aviation's statement that the lawsuits against Air India in this District, including by the Devas Shareholders, would not have "any impact on the disinvestment process"))

The Devas Shareholders do not address the then pending sale of Air India in their Complaint.  In a November 11, 2021 letter, however, the Devas Shareholders characterize the sale of Air India as a "step[] . . . to put Air India's assets out of reach of [the Republic of India's] creditors in the U.S."  (Nov. 11, 2021 Joint Ltr. (<u>Devas</u> Dkt. No. 22) at 2; <u>see also</u> Nov. 15, 2021 Devas Shareholders Ltr. (<u>Devas</u> Dkt. No. 27) at 4 (arguing that the fact that the privatization of Air India is "only coming to fruition now indicates that the . . . sale may very well be related to this and other awards against [the Republic of] India"))

Air India, for its part, denies that there is any connection between the sale of Air India to a private entity and the arbitration awards against the Republic of India.  According to Air India, "[i]n 2018 – before Devas got its [arbitration] [a]ward" – the Republic of India "publicly announced that it would divest Air India."  (Air India Opp. Br. (<u>Devas</u> Dkt. No. 36) at 10 (citing Cmplt. (<u>Devas</u> Dkt. No. 1) ¶ 65))  Air India also cites June 2021 news reports in which the Republic of India "announced that the divestment would be completed in 2021."  (<u>Id.</u>)

## C.     <u>Pending Motions</u>

Before the sale of Air India to Tata Sons closed, Air India moved to stay both of the instant cases in their entirety pending resolution of the Republic of India's motions to dismiss in the confirmation proceedings pending in D.C. district court.  Given that the issues and arguments in the instant cases overlap significantly with those in the D.C. proceedings, Air India

argued that this Court should stay the instant cases until Judge Lamberth and Judge Leon have determined whether the Republic of India is immune from suit under the FSIA.  (Air India Br. (<u>Devas</u> Dkt. No. 33) at 7, 14-23; Air India Br. (<u>Deutsche Telekom</u> Dkt. No. 26) at 8, 14-23)

In the alternative, Air India moved for a stay of discovery until this Court resolves Air India's anticipated motion to dismiss for lack of subject matter jurisdiction under the FSIA. Air India argued that (1) Plaintiffs are not entitled to fact discovery until the Court determines that it has jurisdiction; and (2) Plaintiffs are not entitled to jurisdictional discovery, because they have not made a <u>prima facie</u> showing that Air India or the Republic of India has waived sovereign immunity.  (Air India Br. (<u>Devas</u> Dkt. No. 33) at 11-13, 23-24; Air India Br. (<u>Deutsche Telekom</u> Dkt. No. 26) at 12-14, 23-24)

In submissions made after the sale of Air India to Tata Sons was consummated, Air India no longer seeks a complete stay of the instant actions.  And Air India no longer anticipates filing a motion to dismiss for lack of subject matter jurisdiction under the FSIA. Instead, Air India requests permission "to move to dismiss on the basis that the closing of the sale renders [P]laintiffs' actions moot."  (Jan. 27, 2022 Air India Ltr. (<u>Devas</u> Dkt. No. 48; <u>Deutsche Telekom</u> Dkt. No. 30) at 1)  Air India argues that such a motion "has the potential to dispose of these actions entirely without the need for the Court to address any of the other grounds for dismissal" discussed in Air India's prior submissions.  (<u>Id.</u>)

The Devas Shareholders have moved for expedited discovery concerning (1) "the relationship between [the Republic of] India and Air India . . . and other facts tending to establish whether treating Air India as distinct from [the Republic of] India in this case would work fraud or injustice on the Devas Shareholders"; and (2) "the nature of the . . . transaction by which ownership of Air India [was] transferred to a private company."  (Devas Shareholders Br. (<u>Devas</u>

Dkt. No. 30) at 7-8)  While the Devas Shareholders acknowledge that "the alter-ego question" – as to which they seek expedited discovery – "goes to the merits of this dispute," they contend that they are entitled to discovery concerning this issue because it is relevant to whether the Republic of India has waived sovereign immunity under the FSIA.  (Id. at 20-21)  As to discovery regarding Air India's now-consummated transaction with Tata Sons, the Devas Shareholders argue that "[t]he need for such discovery is particularly acute given Air India's contention that the . . . sale will put its assets out of reach and therefore moot this case."  (Id. at 21)

Deutsche Telekom has moved for (1) expedited discovery into facts "probative of Air India's status as an alter ego of India"; (2) "disclosure of the purchase agreement as well as any amendments thereto or side agreements necessary to understand the nature of [Air India's] . . . transaction [with Tata Sons]"; and (3) "disclosure of what executable assets Air India has in the United States," so that Deutsche Telekom may pursue pre-judgment attachment.  (Pet. Br. (Deutsche Telekom Dkt. No. 24) at 6-7)  In seeking expedited discovery, Deutsche Telekom makes many of the same arguments set forth by the Devas Shareholders.

## DISCUSSION

## I.      AIR INDIA'S MOTION TO STAY

Before the sale of Air India to Tata Sons was consummated, Air India moved to stay both of the instant actions until the Republic of India's motions to dismiss have been resolved in D.C. district court.  (Air India Br. (Devas Dkt. No. 33) at 7, 14-23; Air India Br. (Deutsche Telekom Dkt. No. 26) at 8, 14-23)  Although Air India has not formally withdrawn its originally stay motion, it has implicitly done so, because in a January 27, 2022 letter, it seeks permission "to move to dismiss on the basis that the closing of the sale renders [P]laintiffs'

actions moot."  (Jan. 27, 2022 Air India Ltr. (<u>Devas</u> Dkt. No. 48; <u>Deutsche Telekom</u> Dkt. No. 30) at 1)

Although Air India has changed its litigation strategy in light of the sale to Tata Sons, this Court must nonetheless consider whether a stay of the instant actions is warranted in light of the parallel D.C. district court proceedings, as Air India had earlier argued.  <u>See</u> <u>Byron v. Genovese Drug Stores, Inc.</u>, No. 10-CV-03313, 2011 WL 4962499, at *2 (E.D.N.Y. Oct. 14 2011) ("The power to stay the proceedings or dismiss without prejudice may be exercised by a district court, <u>sua</u> <u>sponte</u>."); <u>Lufthansa Technik AG v. Astronics Corp.</u>, No. 11-CV-628A, 2011 WL 3957509, at *3 (W.D.N.Y. Sept. 7, 2011) ("Dismissal of duplicative litigation can occur <u>sua</u> <u>sponte</u>." (citing <u>Banks-Holliday v. Am. Axle & Mfg., Inc.</u>, No. 02-CV-24S(SC), 2005 WL 189724 (W.D.N.Y. Jan. 24, 2005))); <u>see</u> <u>also</u> <u>Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.</u>, 736 F.3d 255, 258 n.1 (4th Cir. 2013) ("[T]he court was free to raise the issue of the first-to-file rule <u>sua</u> <u>sponte</u>.").

### A.   <u>Legal Standard</u>

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254 (1936); <u>see</u> <u>also</u> <u>Sierra Rutile Ltd. v. Katz</u>, 937 F.2d 743, 750 (2d Cir. 1991) (recognizing that "district courts have 'inherent power' to grant stays in certain circumstances" (quoting <u>Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.</u>, 339 F.2d 440, 441 (2d Cir. 1964))).  For example, "[a]s part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit."  <u>Curtis v. Citibank, N.A.</u>, 226 F.3d 133, 138 (2d

Cir. 2000) (citing, inter alia, Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).

The Second Circuit has noted that "[t]he complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." Id.; see also Colorado River, 424 U.S. at 817 ("As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation.").  While "no precise rule" governs the determination of whether to stay a duplicative federal suit, courts in this Circuit often look to five factors set forth in Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996):

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

Id.; see, e.g., UnitedHealthcare Ins. Co. v. Regeneron Pharmaceuticals, Inc., 21 CV 6245 (VB), 2021 WL 6137097 at *2 (S.D.N.Y. Dec. 29, 2021); Van Elzen v. Global Strategy Grp., LLC, 20-CV-3541 (JPO), 2021 WL 185328, at *2 (S.D.N.Y. Jan. 19, 2021); Laser Spa of Rochester, LLC v. Erie Ins. Co., Case No. 20-cv-6308-FPG, 2020 WL 5898640, at *1 (W.D.N.Y. Oct. 5, 2020); Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC, 18-cv-06749 (AMD) (PK), 2020 WL 738150, at *2 (E.D.N.Y. Feb. 13, 2020).

**B.**    **Analysis**

      **1.**    **Whether the Instant Cases Are Duplicative of the D.C. District Court Proceedings**

As an initial matter, this Court must determine whether the instant cases are duplicative of the confirmation actions brought against the Republic of India by the Devas Shareholders and Deutsche Telekom in D.C. district court.  See Sacerdote v. Cammack Larhette

15

Advisors, LLC, 939 F.3d 498, 504 (2d Cir. 2019) (noting that where a stay is premised on duplicative litigation, "'the [other] case must be the same'" (quoting The Haytian Republic, 154 U.S. 118, 124 (1894))).

Plaintiffs argue that the instant proceedings are not duplicative of the D.C. actions because they allege that Air India is the alter ego of the Republic of India, an issue that "is not relevant to, and will not be resolved in, the D.D.C. proceeding[s]." (Devas Shareholders Opp. Br. (Devas Dkt. No. 35) at 12; see also Pet. Opp. Br. (Deutsche Telekom Dkt. No. 28) at 17 ("The crux of the present action is to enforce an arbitral award against Air India as an alter ego of India, a claim that is entirely absent from the D.D.C. Action." (emphasis in original)))  But Plaintiffs' alter ego theory is premised on the notion that Air India is legally indistinct from the Republic of India, and the instant actions are thus simply another means by which to enforce the foreign arbitration awards against the Republic of India.

Indeed, in order to circumvent the protections provided by the FSIA, Plaintiffs rely on the Republic of India's conduct to establish exceptions to sovereign immunity under the FSIA – the very same issue pending in the D.C. district court actions.  (See Cmplt. (Devas Dkt. No. 1) ¶ 16 (alleging that Air India is "not entitled to immunity in an action to enforce an arbitration agreement because India has waived that immunity by agreeing to the [New York Convention]"); id. (alleging that Air India "is not immune under § 1605(a)(6) [of the FSIA] from an action to enforce an arbitral award governed by the New York Convention" – that is, the award by The Hague Tribunal against the Republic of India); Pet. (Deutsche Telekom Dkt. No. 1) ¶ 18 (alleging that "Air India is not immune because its alter ego, India, is a party to the New York Convention"); id. (alleging that Air India is not immune under § 1605(a)(6) of the FSIA because the action is one to enforce the Geneva Tribunal arbitration award against the Republic

16

of India))  Accordingly, the D.C. district court actions will address the same underlying subject

matter jurisdiction issue that Air India intends to raise in a motion to dismiss here:  whether the

Republic of India is immune from suit under the FSIA.[7]

      Plaintiffs further suggest that <u>CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.</u>,

850 F.3d 58 (2d Cir. 2017), supports their argument that multiple and duplicative enforcement

proceedings should proceed simultaneously.  (<u>See</u> Devas Shareholders Opp. Br. (<u>Devas</u> Dkt. No.

35) at 9-10; Pet. Opp. Br. (<u>Deutsche Telekom</u> Dkt. No 28) at 16-17)  In <u>CBF</u>, the district court

had dismissed an action to "enforce" a foreign arbitration award under the New York Convention

on the grounds that the plaintiffs "were required to confirm the award prior to seeking

enforcement of that award." <u>CBF</u>, 850 F.3d at 68.  The Second Circuit reversed, holding that

"the New York Convention and its implementing legislation in Chapter 2 of the FAA envision a

single-step process for reducing a foreign arbitral award to a domestic judgment." <u>Id.</u> at 72

(quotation marks and citation omitted).

      Acknowledging that, under <u>CBF</u>, Plaintiffs are not required to separately confirm

the awards of The Hague Tribunal and the Geneva Tribunal before seeking their enforcement in

the United States, <u>CBF</u> sheds no light on whether this Court should stay actions that are largely

duplicative of ongoing proceedings before another federal district court, in which motions to

dismiss are pending addressing the same subject matter jurisdiction issues that have been raised

---

[7]  Although the instant cases involve an additional FSIA exception not at issue in the D.C.
district court actions – the applicability of the "commercial activity" exception set forth in 28
U.S.C. § 1605(a)(2) (<u>see</u> Cmplt. (<u>Devas</u> Dkt. No. 1) ¶ 16; Pet. (<u>Deutsche Telekom</u> Dkt. No. 1)
¶ 18) – this circumstance does not change the fact that any motion to dismiss premised on the
FSIA would be largely duplicative of those currently pending before the D.C. district court.

here.  That issue turns not on the New York Convention, but instead on this Court's inherent authority to control its docket and to discourage duplicative litigation.[8]

The Court concludes that the instant cases are duplicative of Plaintiffs' confirmation proceedings in the D.C. district court.  The relief Plaintiffs seek here is, at its core, the same relief they seek in the D.C. actions:  a judgment recognizing and enforcing the final arbitration awards issued by The Hague Tribunal and the Geneva Tribunal against the Republic of India.  (Compare Cmplt. (Devas Dkt. No. 1) at 44; Pet. (Deutsche Telekom Dkt. No. 1) at 63-64, with CC/Devas (Mauritius) Ltd v. Republic of India, 21 Civ. 106 (RCL), Pet. (Dkt. No. 1) at 32 (D.D.C. Jan. 13, 2021); Deutsche Telekom AG v. Republic of India, 21 Civ. 1070 (RJL), Pet. (Dkt. No. 1) at 34 (D.D.C. Apr. 19, 2021))  The fact that Plaintiffs assert alter ego theories here and request declaratory relief does not negate the overlapping nature of the proceedings, including Plaintiffs' near identical theories of subject matter jurisdiction.

Accordingly, this Court will go on to "consider the equities of the situation" to determine whether a stay is warranted.  Curtis, 226 F.3d at 138.

_____

[8]  Plaintiffs similarly argue that Air India has not satisfied the requirements for adjourning enforcement proceedings under the New York Convention, and that accordingly its motions for a stay should be denied.  (See Devas Shareholders Opp. Br. (Devas Dkt. No. 35) at 10-11; Pet. Opp. Br. (Deutsche Telekom Dkt. No. 28) at 17)  This Court's inherent authority to stay duplicative proceedings is independent of whether it is authorized to grant a stay under the New York Convention, however.  See Hulley Enter. Ltd. v. Russian Federation, 211 F. Supp. 3d 269, 276-77, 280-86 (D.D.C. 2016) (analyzing whether a stay should be granted pursuant to the court's inherent authority even though "the [c]ourt [was] not in a position to issue a stay pursuant to the New York Convention"); Hewlett-Packard Co., Inc. v. Berg, 61 F.3d 101, 105-06 (1st Cir. 1995) (holding that "a district court may grant a stay in circumstances other than those authorized in Article VI" of the New York Convention, such as when there is a "related proceeding [pending] in another tribunal"); cf. WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 76 (2d Cir. 1997) (recognizing that "district courts, despite the inapplicability of the FAA, may stay a case pursuant to 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants'" (quoting Nederlandse, 339 F.2d at 441)).

2.      *Kappel* **Factors**

a.      **Potential Prejudice to Air India**

A "baseline presumption of immunity from suit" is afforded to an agency or instrumentality of a foreign state under the FSIA.  Federal Republic of Germany v. Philipp, 141 S. Ct. 703, 709 (2021); see 28 U.S.C. § 1603(a) (defining "foreign state" under the FSIA to include "an agency or instrumentality of a foreign state"); Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd., 476 F.3d 140, 143-44 (2d Cir. 2007) (affirming immunity of company created and supervised by Korean government as an "organ" of the state).  Consistent with this presumption of immunity, the Second Circuit has instructed that – in cases implicating the FSIA – discovery before subject matter jurisdiction has been established "'should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination.'"  EM Ltd. v. Republic of Argentina, 473 F.3d 463, 486 (2d Cir. 2007) (quoting First City, Texas-Houston, N.A. v. Rafidain Bank, 150 F.3d 172, 176 (2d Cir. 1998)).

In the D.C. actions, the Republic of India has filed motions to dismiss in which it contends that it is immune from suit under the FSIA.  Were the D.C. courts to conclude in the D.C. actions that the Republic of India is protected by the FSIA, and were this Court to conclude that Air India is a creature of the Republic of India, the rulings of the D.C. courts might well have a profound effect on the instant actions.

And were this Court to simultaneously consider the subject matter jurisdiction and FSIA issues while motions to dismiss predicated on these same issues are pending in the D.C. courts, there is an obvious risk of inconsistent or conflicting rulings.

Given the strong presumption of immunity afforded by the FSIA, and the possibility that the D.C. court's resolution of the pending motions to dismiss could have a

profound effect on the viability of the instant actions, the prejudice to defendant factor weighs in favor of a stay until the D.C. courts have resolved the pending motions to dismiss.  Cf. Royal Park Inv. SA/NV v. Deutsche Bank Nat'l Tr. Co., 17-CV-5916 (AJN), 2018 WL 3849840, at *3 (S.D.N.Y. Aug. 10, 2018) ("[W]hile it is not necessarily the case that resolution here would involve a duplicative determination, the probability that it might outweighs the negligible prejudice [the plaintiff] would suffer from any delay . . . ." (emphasis in original)).

### b.    Potential Prejudice to Plaintiffs

As discussed above, on January 27, 2022, a transaction in which the Republic of India sold Air India to a private party was consummated.  (See Jan. 27, 2022 Air India Ltr. (Devas Dkt. No. 48; Deutsche Telekom Dkt. No. 30) at 1)  While Plaintiffs contend that discovery is urgently needed in light of the sale – given Air India's claim that the sale moots Plaintiffs' claims – Plaintiffs' arguments regarding urgency are significantly undermined by Plaintiffs' representations that the sale of Air India does not moot their claims.  Plaintiffs argue that, "[i]f Air India is found to be India's alter ego as of the time of the arbitral award[s], Air India's transfer would be subject to [Plaintiffs'] claims, and the new owner will take control of Air India with notice of [Plaintiffs'] claim on a portion of its assets."  (Devas Shareholders Br. (Devas Dkt. No. 30) at 8; see also Pet. Br. (Deutsche Telekom Dkt. No. 24) at 10 ("Air India cannot simply nullify its accrued liability because its ultimate ownership is transferred to a potentially bona fide third party, thereby destroying the original alter ego relationship."))

This Court cannot resolve on the current record what effect the sale of Air India will have on Plaintiffs' claims.  But Plaintiffs contend that the sale simply results in Air India's liability being passed on to Tata Sons.  This argument significantly undermines Plaintiffs' assertion that a temporary stay of these proceedings will cause them irreparable harm.

A temporary stay is also not likely to complicate discovery or result in the loss of discoverable material.  Before the sale of Air India was consummated, Plaintiffs argued that "Air India's new owners may lack knowledge of document location, inventory, and legacy operations," and that "[t]here may be a change in key leadership and personnel, including current managers who may leave the jurisdiction altogether, such that crucial information that could be gained through discovery now . . . will be lost after the sale."  (Pet. Br. (Deutsche Telekom Dkt. No. 24) at 18; see also Devas Shareholders Br. (Devas Dkt. No. 30) at 24 (arguing that a "transfer of control may make jurisdictional discovery difficult or impossible"))

Now that the sale has been completed, Plaintiffs continue to argue that the sale will impede discovery.  Deutsche Telekom contends that "the closing of the transaction here only compounds the risk that evidence, especially witnesses able to testify about Air India's alter ego status, will be lost or rendered inaccessible due to the change of corporate control."  (Jan. 31, 2022 Pet. Ltr. (Deutsche Telekom Dkt. No. 32) at 1)  And the Devas Shareholders argue that "expedition of discovery is all the more appropriate now given the concerns that Plaintiffs previously noted – i.e. uncertainty about the disposition of documents and witnesses – which are heightened now that the transaction has closed."  (Jan. 31, 2022 Devas Shareholders Ltr. (Devas Dkt. No. 52) at 2)

Plaintiffs' arguments are speculative.  They have not demonstrated that the sale of Air India will cause Air India not to meet its discovery obligations.  Indeed, Air India has represented that its "documents are preserved pursuant to a litigation hold," and "a condition of sale requires the new owner to retain all current Air India employees for at least one year."  (Air

India Br. (Devas Dkt. No. 33) at 22)  Such measures will help ensure that relevant documents are not lost or misplaced during the pendency of any stay.[9]

        Plaintiffs have not demonstrated that they will suffer prejudice if a stay is granted.

### c.    <u>Interests of the Courts</u>

        As discussed above, the issues raised in the Republic of India's motions to dismiss in the D.C. actions substantially overlap with the issues that this Court would have to decide in connection with Air India's motions to dismiss for lack of subject matter jurisdiction.

        In the instant actions, Plaintiffs have invoked three exceptions to sovereign immunity under the FSIA:  the "waiver" exception set forth in 28 U.S.C. § 1605(a)(1); the "commercial activity" exception set forth in 28 U.S.C. § 1605(a)(2); and the "arbitration" exception set forth in 28 U.S.C. § 1605(a)(6).[10]  (See Cmplt. (Devas Dkt. No. 1) ¶ 16; Pet. (Deutsche Telekom Dkt. No. 1) ¶ 18)

---

[9]  Deutsche Telekom argues that "[t]he change of control also implicates the disposition of Air India's U.S. assets and thus Deutsche Telekom's eventual ability to enforce a judgment against those assets." (Jan. 31, 2022 Pet. Ltr. (Dkt. No. 32) at 1-2)  To the extent that Deutsche Telekom suggests that it might seek pre-judgment attachment of Air India's assets in the United States in order to preempt any prejudice that could result from the privatization of Air India (see Nov. 9, 2021 Pet. Ltr. (Deutsche Telekom Dkt. No. 10) at 1 (previewing motion for pre-judgment attachment); but see (Pet. Br. (Deutsche Telekom Dkt. No. 24) at 7) (stating that discovery is necessary before Deutsche Telekom can "take a view as to whether it is appropriate to seek pre-judgment attachment")), Deutsche Telekom has not explained why discovery in aid of such a motion should be permitted before the Court has concluded that it has subject matter jurisdiction under the FSIA.  See EM Ltd., 473 F.3d at 486 (before a court has made an immunity determination, discovery is appropriate "only to verify allegations of specific facts crucial to an immunity determination" (quotation marks and citation omitted)).

[10]  In a January 31, 2022 letter filed after the transaction with Tata Sons closed, the Devas Shareholders raise a new argument:  that, as a now-private entity, Air India is barred from asserting sovereign immunity, as it is no longer an instrumentality of the Republic of India.  (Jan. 31, 2022 Devas Shareholders Ltr. (Devas Dkt. No. 52) at 2)  This new argument merely highlights the need to bring order to this litigation.  No useful purpose is served in this Court hearing seriatim motions to dismiss – and considering seriatim arguments in opposition – whether the motions to dismiss are premised on mootness, sovereign immunity, or another ground.  Given the motions to dismiss pending in the D.C. district courts concerning India's

Two of these exceptions have been invoked by Plaintiffs in the D.C. actions.  See CC/Devas (Mauritius) Ltd v. Republic of India, 21 Civ. 106 (RCL), Pet. (Dkt. No. 1) ¶ 17 (D.D.C. Jan. 13, 2021) (invoking 28 U.S.C. § 1605(a)(1), (a)(6)); Deutsche Telekom AG v. Republic of India, 21 Civ. 1070 (RJL), Pet. (Dkt. No. 1) ¶ 12 (D.D.C. Apr. 19, 2021) (same). Because the applicability of these asserted exceptions is – in both the instant actions and the D.C. actions – premised on the Republic of India's conduct, this Court and the D.C. courts will be required to undertake virtually identical analyses concerning application of the FSIA.

Because the D.C. courts' rulings may have a profound effect on the instant cases, a stay is appropriate.  See, e.g., Credit Suisse Sec. (USA) LLC v. Laver, 18 Civ. 2920 (AT), 2019 WL 2325609, at *3 (S.D.N.Y. May 29, 2019) ("A stay may be appropriate in cases where another proceeding is pending and may 'bear upon [the action for which a stay is sought], even if such proceedings are not necessarily controlling the action that is to be stayed.'" (quoting La Sala v. Needham & Co., Inc., 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005))).

Given that resolution of the Republic of India's motions to dismiss in the D.C. actions may narrow or clarify FSIA issues in the instant actions, staying the instant actions until those motions have been decided will serve the "interests of the courts by promoting judicial efficiency and minimizing the possibility of conflicts between different courts."  Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A., 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009) (quotation marks, citations, and alteration omitted).

---

sovereign immunity, judicial efficiency is best served by staying the instant cases until those motions are resolved.  Cf. In re Air Cargo Shipping Servs., M.D.L. No. 1775, 2007 WL 2071703, at *1 (E.D.N.Y. July 18, 2007) (considering whether defendants should be permitted to "defer raising the issue of subject matter jurisdiction under the [FSIA]"; noting that "piecemeal, seriatim motions to dismiss will not serve the interests of the parties or the court in the orderly conduct of this litigation").

### d.   The Public Interest

As to the public interest, "while the public has an interest in the prompt adjudication of this and all other cases, the public is also not served by wasting of judicial resources."  Royal Park Inv. SA/NV, 2018 WL 3849840, at *3; see also Readick v. Avis Budget Grp., Inc., No. 12 Civ. 3988 (PGG), 2014 WL 1683799, at *6 (S.D.N.Y. Apr. 28, 2014) ("Considerations of judicial economy are frequently viewed as relevant to the public interest, and, as noted, they weigh against the investment of court resources that may prove to have been unnecessary." (quotation marks, citations, and alteration omitted)); Catskill Mountains Chapter of Trout Unlimited, Inc., 630 F. Supp. 2d at 306 ("By conserving judicial resources, a stay will serve not only the interest of the courts, but also the interests of the Parties, the nonparties, and the public in an orderly and efficient use of judicial resources." (quotation marks and citation omitted)).

The Court concludes that the public interest factor favors a stay, because it will avoid the waste of judicial resources.[11]

*         *         *

Having considered the Kappel factors, the Court concludes that they all favor the issuance of a stay.

### 3.   Length of Stay

The Republic of India's motions to dismiss were fully briefed as of October 4, 2021, in the Devas Shareholders' D.C. action, and fully briefed as of November 12, 2021, in Deutsche Telekom's D.C. action.  See CC/Devas (Mauritius) Ltd v. Republic of India, 21 Civ. 106 (RCL), Briefing Schedule Order (Dkt. No. 30) (D.D.C. Oct. 1, 2021); Deutsche Telekom

---

[11]  Plaintiffs and Air India have not addressed the interests of third parties.

AG v. Republic of India, 21 Civ. 1070 (RJL), Briefing Schedule Minute Order (D.D.C. Oct. 26,

2021).  The D.C. district courts will resolve the Republic of India's motions in due course.

        A stay of the instant cases will remain in effect until those courts issue their

decisions.  This Court cannot predict how the motions to dismiss will be resolved.  To the extent

that any party believes that a continued stay is necessary after decisions have been issued

concerning the motions to dismiss, they may apply for such relief.[12]

## <u>CONCLUSION</u>

        For the reasons stated above, these actions are stayed until the Republic of India's

motions to dismiss in the D.C. actions have been resolved.  Air India's motions to stay discovery

(Air India Mot. (<u>Devas</u> Dkt. No. 32); Air India Mot. (<u>Deutsche Telekom</u> Dkt. No. 25)) are denied

as moot.  Plaintiffs' motions for expedited discovery (Devas Shareholders Mot. (<u>Devas</u> Dkt. No.

29); Pet. Mot. (<u>Deutsche Telekom</u> Dkt. No. 23) are denied as moot.  Air India's request to set a

briefing schedule for its motion to dismiss on mootness grounds (Jan. 27, 2022 Air India Ltr.

(<u>Devas</u> Dkt. No. 48; <u>Deutsche Telekom</u> Dkt. No. 30) at 1) is denied.

        The parties will file a joint letter every sixty days from the date of this

memorandum opinion and order informing the Court of the status of the D.C. actions.  The

parties will transmit to this Court, within three days, any decision issued by the D.C. courts

concerning the pending motions to dismiss.

---

[12]  The stay will remain in effect until both motions to dismiss in the D.C. actions are resolved.
Because (1) the Republic of India's motions to dismiss were fully briefed within about a month
of each other; and (2) the Republic of India's sovereign immunity arguments are virtually
identical in the two D.C. actions, it makes sense to extend the stay until both Judge Lamberth and
Judge Leon have issued their decisions.  To the extent that there is any significant delay between
those decisions, any party may raise that issue to the Court.

The Clerk of Court is directed to terminate the pending motions (21 Civ. 5601,

Dkt. Nos. 29 and 32; 21 Civ. 9155, Dkt. Nos. 23 and 25).

Dated: New York, New York
       February 4, 2022

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge